1

2

3

4                      UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7    HUNG VANNGO,                          Case No. 21-cv-07035-JST (AGT)

                    Plaintiff,
8                                          **REPORT AND RECOMMENDATION**

9        v.                                Re: Dkt. No. 17

10   BEAUTY ADVISOR, LLC,

                    Defendant.
11

12          Judge Tigar, the presiding district judge, referred plaintiff Hung Vanngo's motion for default

13   judgment to the undersigned for a report and recommendation.  That report follows, and with it the

14   recommendation that Judge Tigar grant the motion and enter the requested judgment.

15                              **I.   BACKGROUND[1]**

16          Hung Vanngo is a make-up artist and photographer who works with models and celebrities

17   and with fashion designers and well-known brands.  *See* Compl. ¶¶ 8–12.  Last year he discovered

18   that Beauty Advisor LLC had created a fake profile of him on www.beautyadvisor.com.  The profile

19   featured a picture of Vanngo; a username based on his name, @hungvanngo; a description of his

20   professional accomplishments; and a gallery of photos Vanngo had taken, fourteen of which he had

21   registered with the U.S. Copyright Office.  *See id.* ¶¶ 12–13, 18–29, 33.[2]  The profile suggested that

22   Beauty Advisor's users could connect with Vanngo to obtain "pro advice."  *Id.* ¶ 26.  Vanngo also

23   found an Instagram post by Beauty Advisor featuring one of his copyrighted photographs, with the

24   caption "Check out Hung Vanngo on the BeautyAdvisor App for more."  *Id.* ¶ 30.

25

26   ───────────────

27   [1] On a motion for default judgment, the moving party's factual allegations are taken as true.  *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

28   [2] Vanngo alleges he is the exclusive rights holder of fifteen photographs, but only fourteen of them appeared on www.beautyadvisor.com.  *See id.* ¶¶ 12–14, Ex. A.

United States District Court
Northern District of California

1    Vanngo didn't authorize Beauty Advisor to use his image or likeness, or to display his pho-

2    tographs. *See id.* ¶¶ 28, 32. So in the fall of 2021, he filed this lawsuit against the company. His

3    claims are for copyright infringement, 17 U.S.C. § 501(a), for false impersonation on an internet

4    website, Cal. Penal Code § 528.5, and for violation of California's right of publicity, Cal. Civ. Code

5    § 3344. Vanngo served Beauty Advisor's registered agent with the summons and complaint. When

6    Beauty Advisor didn't timely respond, the Clerk of the Court entered Beauty Advisor's default and

7    Vanngo moved for default judgment. *See* Dkt. 14, 17.

8    ## II. DEFAULT JUDGMENT STANDARD

9    Before entering default judgment, the district court must first confirm that it has personal

10   jurisdiction and subject-matter jurisdiction. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If

11   jurisdiction is present, the *Eitel* factors are considered to determine if default judgment is warranted.

12   These factors are (1) the possibility of prejudice to the plaintiff if judgment isn't entered, (2) the

13   merits of the plaintiff's claims, (3) the sufficiency of the complaint, (4) the sum of money at stake,

14   (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excus-

15   able neglect, and (7) the strong policy in favor of obtaining a decision on the merits. *See NewGen,*

16   *LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (citing *Eitel v. McCool*, 782 F.2d 1470,

17   1471–72 (9th Cir. 1986)). If the *Eitel* factors support default judgment, judgment may be entered

18   in an amount that is supported by the evidence and that doesn't "differ in kind from, or exceed in

19   amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

20   ## III. DISCUSSION

21   Each of the requirements for default judgment has been satisfied.

22   **A.    Subject-Matter Jurisdiction**

23   At a minimum, the Court has subject-matter jurisdiction over Vanngo's copyright claim pur-

24   suant to 28 U.S.C. § 1338(a) and jurisdiction over his state-law claims under 28 U.S.C. § 1367(a).

25   **B.    Personal Jurisdiction**

26   The Court has personal jurisdiction over Beauty Advisor because the company's principal

27   place of business is in California. *See* Compl. ¶¶ 3, 6; *Goodyear Dunlop Tires Operations, S.A. v.*

28   *Brown*, 564 U.S. 915, 924 (2011) (noting that a company's "principal place of business" is a

United States District Court
Northern District of California

1    "paradigm forum for the exercise of general jurisdiction").  Also relevant to personal jurisdiction,

2    Beauty Advisor was "served properly under Fed. R. Civ. P. 4."  *Direct Mail Specialists, Inc. v. Eclat*

3    *Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).  Rule 4(h)(1)(B) permits companies

4    to be served through their registered agents, which happened here.  *See* Dkt. 11 at 1, Dkt. 17-1 at 6.

5    **C.    *Eitel* Factors**

6           All seven *Eitel* factors support default judgment.

7           First, if default judgment isn't entered, Vanngo will be prejudiced because he will be left

8    without a judicial remedy.  Second, Vanngo's claims have merit.

9           • Copyright Infringement: "[A]lmost any photograph may claim the necessary origi-

10   nality to support a copyright . . . ."  *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076 (9th Cir.

11   2000) (simplified).  Vanngo's photos are no exception.  They reflect his personal choice of subject,

12   posture, background, and lighting, among other things.  *See* Compl., Ex. A.  They contain the "cre-

13   ative spark" necessary for copyright protection.  *Ets-Hokin*, 225 F.3d at 1076.  Also, the allegations

14   support that Beauty Advisor willfully infringed Vanngo's copyrights, by knowingly uploading cop-

15   ies of his photos to www.beautyadvisor.com without his consent.

16          • False Impersonation on Internet Website: To attract users, Beauty Advisor

17   knowingly and without consent credibly impersonated Vanngo on www.beautyadvisor.com.

18   Beauty Advisor did so by creating a profile that included Vanngo's name, a picture of him, a list of

19   his professional accolades, and a gallery of photos he had taken.  This conduct constituted false

20   impersonation on an internet website, in violation of California Penal Code section 528.5.[3]

21          • Right of Publicity Violation: Beauty Advisor knowingly used Vanngo's name, pic-

22   ture, and likeness, without his consent, for the purpose of advertising and soliciting services on

23   www.beautyadvisor.com.  This conduct violated Vanngo's right of publicity under California Civil

24

25   _____

26   [3] Section 528.5(a) provides that "any person who knowingly and without consent credibly impersonates an-
     other actual person through or on an Internet Web site or by other electronic means for purposes of harming,

27   intimidating, threatening, or defrauding another person" has committed a misdemeanor offense.  And any
     person who suffers damage or loss by reason of a violation of section 528.5(a) "may bring a civil action

28   against the violator."  Cal. Penal Code § 528.5(e).

1   Code section 3344(a).[4]

2      Moving to the third *Eitel* factor, Vanngo's complaint is well pled.  The allegations aren't too

3   general or conclusory, and when accepted as true, *see Cripps*, 980 F.2d at 1267, they support

4   Vanngo's claims.

5      The fourth *Eitel* factor, the sum of money at stake, also supports default judgment.  As de-

6   tailed below, Vanngo seeks a monetary judgment of $200,342.  This sum isn't trivial, but it is rea-

7   sonably "tailored to the specific misconduct of the defendant."  *Yelp Inc. v. Catron*, 70 F. Supp. 3d

8   1082, 1100 (N.D. Cal. 2014) (simplified).

9      As for the fifth, sixth, and seventh *Eitel* factors, they too support default judgment.  Nothing

10   in the record indicates excusable neglect or a dispute concerning material facts; and although there

11   is a strong policy favoring decisions on the merits, Beauty Advisor's failure to answer the complaint

12   has made such a decision unfeasible.

13   **D.**     **Remedies**

14      Vanngo seeks statutory damages, compensatory damages, a permanent injunction, and an

15   award of attorneys' fees and costs.  Each form of relief is considered below.

16       **1.**     **Statutory Damages**

17      For his copyright-infringement claim, Vanngo seeks $126,000 in statutory damages, which

18   equates to $9,000 per photo for the fourteen photos Beauty Advisor used without Vanngo's consent.

19   When, as here, a defendant's infringement was willful, the Court has discretion to award between

20   $750 and $150,000 in statutory damages for each work the defendant infringed.  *See* 17 U.S.C.

21   § 504(c)(1)–(2); *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1264 (9th Cir.), *cert. denied*,

22   142 S. Ct. 343 (2021).  Within this range, Vanngo seeks a reasonable award.  His evidence supports

23   that $9,000 is approximately triple his licensing fee for the commercial use of a single photo of his

24   on social media.  *See* Dkt. 17-1, Carreon Decl. ¶¶ 13–17, Ex. C.  "[C]ourts have consistently held

25   that a statutory damages award three times the amount that the plaintiff would have received in

---

27   [4] Section 3344(a) provides that "[a]ny person who knowingly uses another's name, voice, signature, photo-
graph, or likeness . . . for purposes of advertising or selling, or soliciting purchases of, products, merchandise,
28   goods or services, without such person's prior consent, . . . shall be liable for any damages sustained by the
person or persons injured as a result thereof."

1   licensing fees is appropriate under § 504(c)." *Broad. Music Inc. v. Paden*, 2011 WL 6217414, at *5

2   (N.D. Cal. Dec. 14, 2011) (Davila, J.).

3           **2.      Compensatory Damages**

4           For his state-law claims, Vanngo seeks $72,000 in compensatory damages. Both of the state

5   statutes in question permit prevailing plaintiffs to recover compensatory damages. *See* Cal. Penal

6   Code § 528.5(e); Cal. Civ. Code § 3344(a). In support of his requested award, Vanngo has submit-

7   ted an invoice for $72,000, which reflects an amount paid to him in exchange for the use of his

8   likeness in an email promotional campaign for a beauty-products company. *See* Carreon Decl.

9   ¶¶ 18–20, Ex. D. He believes this prior work "is sufficiently analogous to the use of his likeness by

10  Beauty Advisor to provide an adequate basis to request $72,000 in actual damages." Dkt. 17 at 15.

11          Vanngo has done enough to prove up damages in Beauty Advisor's absence. *See Domanus*

12  *v. Lewicki*, 742 F.3d 290, 303 (7th Cir. 2014) (allowing "broad latitude" in quantifying damages on

13  default judgment, "especially when the defendant's own conduct impedes quantification") (simpli-

14  fied); *Elektra Ent. Grp. v. Bryant*, 2004 WL 783123, at *2 (C.D. Cal. Feb. 13, 2004) (noting that the

15  plaintiff's burden to prove up damages on default judgment is "relatively lenient").

16          **3.      Permanent Injunction**

17          Vanngo seeks to enjoin Beauty Advisor from infringing his copyrights and from utilizing

18  his likeness or his image to promote commercial products or services. *See* Dkt. 17-2 at 2. The

19  Copyright Act and California's internet-impersonation law both provide for injunctive relief. *See*

20  17 U.S.C. § 502(a); Cal. Penal Code § 528.5(e). And such relief is appropriate here. Vanngo has

21  proven, through default, actual success on the merits of his claims; and without an injunction there

22  will likely be irreparable harm to the market value of his likeness and his photos.

23          **4.      Attorneys' Fees and Costs**

24          Vanngo seeks to recover $1,900 in attorneys' fees and $442 in costs. As the prevailing party,

25  he is eligible for an award of fees and costs. *See* 17 U.S.C. § 505; Cal. Penal Code § 528.5(e)

26  (incorporating Cal. Penal Code § 502(e)(2)); Cal. Civ. Code § 3344(a). And the amounts he seeks

27  to recover are reasonable. His costs were necessary, *see* Carreon Decl. ¶ 26 (documenting a $402

28  filing fee and a $40 service fee), and his attorneys' fees were based on a reasonable hourly rate

($380) and a reasonable number of hours billed (five hours), *see id.* ¶¶ 24–25.

> **5.  Remedies Not Different in Kind or Amount**

As noted in Part II, a default judgment may not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).  The relief Vanngo seeks satisfies this standard.  As to "kind," he seeks forms of relief that he requested in his complaint: statutory damages, compensatory damages, injunctive relief, and reimbursement of attorneys' fees and costs.  *See* Compl. ¶¶ 41–42, 49, 55, Prayer for Relief.  And as to "amount," he seeks damages that don't exceed what he prayed for.  *See id.*, Prayer for Relief (seeking statutory damages up to $150,000 per infringing photo, and compensatory damages in an amount to be proven).  To be sure, Vanngo, in his complaint, didn't identify precisely how much he'd seek to recover in compensatory damages; but he wasn't required to.  *See Twitch Interactive, Inc. v. Johnston*, 2018 WL 1449525, at *9 (N.D. Cal. Jan. 22, 2018) (Freeman, J.) ("So long as a plaintiff requests actual damages in its complaint, it may receive them in a default judgment even though it did not request a specific amount." (citing, *inter alia*, *Henry v. Sneiders*, 490 F.2d 315, 317 (9th Cir. 1974))).

> **IV.  CONCLUSION**

The undersigned recommends that Judge Tigar grant Vanngo's motion, enter default judgment in the amount of $200,342 (consisting of $126,000 in statutory damages, $72,000 in compensatory damages, $1,900 in attorneys' fees, and $442 in costs), and enter the following permanent injunction, which is based on Vanngo's proposal but with minor stylistic modifications:

1) Beauty Advisor LLC and its agents, servants, employees, successors, assigns, and all those acting directly or indirectly in concert or participation with any of them, are permanently enjoined from:

    a) infringing, or inducing infringement of, the exclusive rights of Hung Vanngo under the Copyright Act, by any means, including by direct copyright infringement, inducement to infringe copyrights, contributory infringement, or vicarious copyright infringement;

    b) utilizing, or inducing the use of, the image or likeness of Hung Vanngo to promote, by any means, any commercial product or service.

United States District Court
Northern District of California

6

* * *

By March 25, 2022, Vanngo must serve Beauty Advisor with a copy of this report, by any means reasonably calculated to provide actual notice, and must file proof of service.  Any party may object to this report within fourteen days of being served with a copy of it.  *See* 28 U.S.C. § 636(b)(1).

**IT IS SO RECOMMENDED.**

Dated: March 21, 2022

ALEX G. TSE
United States Magistrate Judge